JOHN VINCI, Plaintiff-Appellant, *v.* BILL BASS, Defendant-Appellee.

First District (3rd Division)    No. 61297

Opinion filed April 15, 1976.—Rehearing denied August 23,1976.

Robert W. Sacoff and Brian O'Connor, both of Ross, Hardies, O'Keefe, Babcock & Parsons, of Chicago, for appellant.

Ronald M. DeHaan, of DeHaan, Luhman & Stronberg, of Chicago, for appellee.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

This action was brought by an architect to recover $10,258.55 for services his firm had rendered the defendant under an oral contract. The jury found for the defendant and judgment was entered on the verdict. The plaintiff has appealed from the judgment and the trial court's adverse ruling on his post-trial motions. Both parties are represented by different counsel in this court than in the trial court.

The circumstances giving rise to this appeal are these: In late January 1971, the defendant, Bill Bass, hired the architect, John Vinci, to prepare interior designs for his apartment at 20 East Cedar Street, Chicago, and agreed to pay him a fee of $15 an hour. Bass was using the apartment as a home and office but hoped that, with some remodeling, it could also be used as an art gallery. Vinci prepared and submitted to Bass drawings for the proposed art gallery and plans for furnishings, paintings, air-conditioning and electrical lines. In March 1971 he estimated the construction costs at $42,000 and sent Bass an $1,800 bill for his services. Bass paid $1,000 on account and Vinci continued working on designs for the gallery until Bass, who had learned that his building was being converted into condominium apartments, told him to stop. In June Vinci sent another bill for services rendered and Bass made a second payment of $1,000.

During the summer of 1971 Bass talked with Vinci about the possibility of purchasing either his apartment or a new residence. At his request Vinci accompanied him when he looked at other possible homes. There was one residence on Dearborn Street that Bass thought might be suitable for use as a home, office and art gallery, but when Vinci estimated that the cost of remodeling it would be around $100,000, Bass told him that he "didn't want to spend that kind of money." In August Bass bought his apartment as a condominium for $60,000 and paid Vinci $150 for his assistance in the house-hunting project.

In September Bass asked Vinci to resume preparing plans for the apartment. They had several conversations in which various suggestions were made. In addition to the items included in the March estimate, it appears that Bass suggested a burglar alarm system. Vinci suggested the installation of a mechanized recessed lighting system for the art gallery, demolition of the concrete stairway to the apartment's upper level and its replacement with a cantilevered staircase, installation of double-paned windows with blinds between the panes, reconstruction of the ceiling in the front hall, modernization of three bathrooms, installation of central air-conditioning and modification of the apartment's electrical system to accommodate it, and construction of an onyx wall. In his March estimate of $42,000, Vinci had listed the cost of three of these suggested improvements ($5,000 for air-conditioning, $3,000 for modification of the

electrical system and $1,500 for an onyx wall) but he never prepared an itemized estimate of the costs of his later suggestions. He testified that, instead, he attempted to provide oral information of their cost, but he admitted that the only figure he could remember giving was $10,000 for replastering the hall ceiling. He also testified that he retained the services of a mechanical engineering firm and a structural engineer to handle the technical problems that he believed some of the suggested improvements entailed. He stated that he told Bass that these outside consultants would be needed for the proper preparation of plans. Bass testified that he was not informed of this.

In February 1972 Vinci submitted the plans to various contractors. Four bids were received which ranged from $105,057 to $153,268. After Bass saw the bids and stated that they were much too high, Vinci held a meeting with the lowest bidder to see whether its bid could be reduced. Their negotiations resulted in a bid of $70,000. Bass was not satisfied and suggested in a letter dated March 8, 1972, that Vinci send copies of the blueprints to a contractor known to Bass. The resulting bid was approximately $98,000.

On May 4, 1972, Vinci sent Bass a bill for $12,001.16 — $7,565 for architectural services at $15 an hour, $4,091.16 for the mechanical engineers and $345 for the structural engineer. He indicated, however, that he would be willing to accept a lesser amount ($10,606.84) — a figure he had arrived at by using an alternate flat percentage formula suggested by the American Institute of Architects. Four days later, Bass sent Vinci $3,500: a $2,000 check for himself and one for $1,500 payable to the mechanical engineering firm. In his accompanying letter Bass promised full payment within a 60-day period; however, he instructed Vinci to send him notice of the balance which was due. He testified that he made this request because he found it impossible to ascertain the actual balance from Vinci's bill and letter. Despite repeated requests Bass made no further payment and Vinci filed this suit.

Following a jury verdict which awarded him nothing, Vinci presented motions for judgment notwithstanding the verdict, for a new trial and for leave to amend his complaint to conform to the evidence. The motions were denied.

Vinci's complaint alleged that Bass owed him $10,258.55. But in his letter of March 4, 1972, he asked for alternative sums of $10,606.84 and $12,001.16. His testimony conflicted with these figures. At one point he said that $8,500 was due him; at another that $8,195 would be fair, and at another that the balance would be $4,900 if the flat percentage formula (suggested in his March 4 letter) were computed in conjunction with the lowest bid of $70,000. He testified he spent 600 hours developing his blueprints at $15 an hour ($9,000). A registered architect who testified in

his behalf said that the drawings prepared by Vinci represented at least 800 hours of work ($12,000), plus hidden time not reflected by the drawings which is usually computed at three times the hours spent on the drawings. He said a bill for 1,500 hours of work ($22,500) would have been reasonable.

To compound the confusion that may have been caused by this testimonial uncertainty, the jury was told in an issues instruction prepared by Vinci and given to the jury at his request that he had the burden of proving each of the following propositions:

"First, that the sum of $15,258.55 is a reasonable sum for the plaintiff's services;

Second, that there is due and owing the plaintiff a balance of $10,258.55.

If you find from your consideration of all the evidence that each of these propositions has been proved then your verdict should be for the plaintiff, but if, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved, then your verdict should be for the defendant."

■■ In light of his own evidence, Vinci's instruction placed an almost unsurmountable barrier in the way of a verdict in his favor. Under the evidence the jury could have easily concluded that $10,258.55 was not due him and that $15,258.55 was not a reasonable fee for his services. It could have considered that his demand for $10,258.55 was excessive and arbitrary. It could have believed that the $5,650 Bass had paid him was enough for his services—and this despite Bass' acknowledgment in his letter of May 8, 1972, that he would pay more. In considering the reasonable value of Vinci's services, the jury could have concluded that Bass' response, that he "didn't want to spend that kind of money," to Vinci's estimate of $100,000 as the cost of remodeling a prospective building, was an admonition that $100,000 was more than he could spend on any project that might be undertaken. This figure, if viewed as a ceiling, assumed greater significance when Vinci was informed that the purchase of Bass' apartment as a condominium would cost $60,000; even the lowest bid of $70,000, in connection with the $60,000, would have exceeded the maximum ceiling. The jury could also have taken into consideration the lack of itemization in Vinci's proposals, and the many suggestions made by him and the few approved by Bass.

■■ Even if the jury had been inclined to award Vinci an additional sum, his mandatory instruction made it virtually impossible for it to do so. The instruction also erected a substantial impediment to the granting of his post-trial motions. The motions were based on the contention that uncontrovertible evidence at the trial supported a recovery and that the verdict was, therefore, contrary to the manifest weight of the evidence. It

may well be that the evidence supported a recovery—some recovery—but Vinci never testified that Bass owed him $10,258.55, and the jury was instructed at his request that he would not be entitled to a verdict unless he proved that he was owed this precise amount. Under the circumstances we cannot say that the trial court erred in not granting either his motion for judgment notwithstanding the verdict or his motion for a new trial.

■■ And certainly, if the court did not err in denying the motion for a new trial, it did not err in denying the motion to amend the complaint. This motion, presented after verdict and judgment, sought to change the theory of recovery from a promise to "pay plaintiff a reasonable sum as his fee" (with a balance due of $10,258.55) to a recovery based on the following: Bass agreed to pay Vinci $15 an hour; Vinci worked 800 hours; $12,000 was earned; $4,000 was paid; $8,000 was still due. Although Illinois courts are generally liberal in granting amendments to conform to the proof (*Powers v. Sturm* (1973), 12 Ill. App. 3d 346, 297 N.E.2d 628) all the proposed allegations were known to the plaintiff prior to trial and prior to his selecting a theory of recovery. The court did not abuse its discretion in denying the amendment. The verdict was against the plaintiff; permitting him to amend his complaint, while denying him a new trial, would have been a futile gesture.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.